UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              Case No. 19-CR-167

HUNTER C. NICHOLSON,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Timothy W. Funnell, Assistant United States Attorney, and the defendant, Hunter C. Nicholson, individually and by attorney Krista Halla-Valdes, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGE

2. The defendant has been charged in a one-count indictment, which alleges a violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

3. The defendant has read and fully understands the charge contained in the indictment. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

THE GRAND JURY CHARGES THAT:

1. On or about June 15, 2019, in the State and Eastern District of Wisconsin,

**HUNTER C. NICHOLSON,**

in connection with the acquisition of a firearm from Jon's Sport Shop, a federally licensed firearms dealer, knowingly made a false and fictitious written statement intended and likely to deceive the dealer about a fact material to the lawfulness of the firearm's sale and disposition.

2. In particular, in connection with the purchase of an Anderson Manufacturing, Model AM-15, 5.56-millimeter rifle, bearing serial number 18237293, Hunter C. Nicholson falsely stated on the Firearms Transaction Record (ATF Form 4473) that he was the actual buyer of the firearm when, in fact, as Nicholson well knew, he was acquiring the rifle for someone else.

All in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

> On June 15, 2009, Hunter C. Nicholson entered Jon's Sport Shop ("Jon's"), a federally licensed firearms dealer in Winnebago County, Eastern District of Wisconsin. Nicholson went to Jon's for the unlawful purpose of buying a rifle for Nicholson's 16-year-old friend, identified herein as "Juvenile Male." Juvenile Male previously described for Nicholson the specific rifle that Juvenile Male wanted and gave Nicholson $550 to make the purchase.
>
> After Nicholson entered Jon's, he spoke with a salesperson, identified the rifle that he wanted to buy, and agreed on a price. The firearm that Nicholson selected—at Juvenile Male's direction—was an Anderson Manufacturing, Model AM-15, 5.56-millimeter semi-automatic rifle, Serial No. 18237293, with a pistol grip and an extended ammunition magazine.
>
> Consistent with federal law governing firearm sales at federally licensed firearms dealers, the salesperson at Jon's required Nicholson to truthfully complete a standard form entitled "Firearms Transaction Record," which is commonly called ATF Form 4473. On the federally required form, Nicholson was identified as the

buyer of the above-described AM-15 rifle, which was described by make, model, and serial number. Nicholson then answered several questions on the form that were material to the lawfulness of the sale. Among them, he knowingly and falsely answered "yes" to Question 11.a., which read as follows:

> Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.** *Exception: If you are picking up a repaired firearm(s) for another person, you are not required to answer 11.a. and may proceed to question 11.b. (See Instructions for Question 11.a.)*

(emphasis in original). The "instructions" referenced in Question 11.a., which are on page four of the form, provide examples of "actual buyer" scenarios. The first example listed is precisely the situation presented here, stating:

> Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith (who may or may not be prohibited). Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is **NOT THE ACTUAL TRANSFEREE/BUYER** of the firearm and must answer "**NO**" to question 11.a. The licensee may not transfer the firearm to Mr. Jones.

(emphasis in original).

Despite Nicholson's false answer to Question 11.a. on ATF Form 4473, he nonetheless signed the form affirming that his answers "are true, correct, and complete"; that he "read and understand[s] the Notices, Instructions, and Definitions" on the form; and "that answering 'yes' to question 11.a. if [he is] not the actual transferee/buyer is a crime punishable as a felony under Federal law . . ." In truth and fact, Nicholson then and there knew that he falsely answered "yes" to Question 11.a. because he was not the actual buyer of the firearm; rather, Nicholson knew that he was buying the firearm for Juvenile Male.

Nicholson paid for the firearm using $550 that Juvenile Male had given him for that purpose. Based on Nicholson's completion of ATF Form 4473, the salesperson (after conducting the federally required background check on Nicholson) transferred the AM-15 rifle to Nicholson. Nicholson left Jon's with the rifle and subsequently provided it to Juvenile Male.

Two days later, on June 17, 2019, Juvenile Male posted a video to Instagram of a friend shooting the AM-15 rifle. Along with the video, Juvenile Male posted the following comment: "Revealing new school shooter gun." The online posting was brought to the attention of the Oshkosh Area School District resource officer, who

3

alerted the Winnebago County Sheriff's Department. Deputies responded to Juvenile Male's residence and recovered the above-described firearm from Juvenile Male's truck. Juvenile Male admitted to posting the online video and comment about a "new school shooter gun," which he said was meant as a joke. He admitted that Nicholson bought the rifle for him because his mother doesn't know "quality guns and his dad is anti-gun."

On July 8, 2019, Nicholson agreed to a non-custodial interview with ATF agents. During the recorded interview, Nicholson said that he received text messages from Juvenile Male asking him to purchase a rifle from Jon's Sport Shop on June 13 or 14, 2019; Nicholson met with Juvenile Male, who wanted Nicholson to buy the above-described firearm at Jon's because Juvenile Male was too young to buy it himself; and Juvenile Male gave Nicholson $550 to make the purchase. Nicholson also said that he went to Jon's on June 15 and bought the rifle for Juvenile Male, using $550 that Juvenile Male gave him plus $50 of his own money, which Juvenile Male still owed him. Nicholson admitted that in completing ATF Form 4473, he answered "yes" to whether he was the actual purchaser of the firearm despite knowing that "yes" was a false answer. Nicholson said that after buying the rifle, he took it to his house, but the following day—June 16, 2019—he took it to Juvenile Male's farm. Nicholson knew that Juvenile Male had recorded a video as they and another friend shot the rifle, but he denied knowing that Juvenile Male posted the video online until after it occurred. Nicholson said that Juvenile Male has "mental issues" and would do things like shooting Teddy Bears, and that Juvenile Male had previously run into trouble for killing "small animals like turtles and stuff."

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6.      The parties understand and agree that the offense to which the defendant will plead guilty carries the following maximum penalties: 10 years' imprisonment, a $250,000 fine, and 3 years' supervised release. It also carries a mandatory special assessment of $100.

7.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

4

## ELEMENTS

8. The parties understand and agree that in order to sustain the charge of false statement to a federally licensed firearms dealer, as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant made a false statement in connection with the acquisition of a firearm from a licensed firearms dealer;
> Second, the defendant did so knowingly; and
> Third, the statement was intended to or likely to deceive the dealer with respect to any fact material to the lawfulness of the sale or other disposition of the firearm.

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

5

## Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

15. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 14 under Sentencing Guidelines Manual § 2K2.1(a)(6).

## Specific Offense Characteristics

16. The parties agree to recommend to the sentencing court that no adjustment for any specific offense characteristic is applicable to the offense level for Count One.

## Acceptance of Responsibility

17. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

## Sentencing Recommendations

18. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

19. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

20. The government agrees to make no recommendation regarding the ultimate sentence to be imposed.

## Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

22. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

23. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed

by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

### Special Assessment

24. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### DEFENDANT'S WAIVER OF RIGHTS

25. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charge against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.  At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

26. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

27. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

28. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

29. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

30. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 12-4-19

HUNTER C. NICHOLSON
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 12/4/19

KRISTA HALLA-VALDES
Attorney for Defendant

For the United States of America:

Date: _____

MATTHEW D. KRUEGER
United States Attorney

Date: _____

TIMOTHY W. FUNNELL
Assistant United States Attorney

11

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: _____

_____
HUNTER C. NICHOLSON
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: _____

_____
KRISTA HALLA-VALDES
Attorney for Defendant

For the United States of America:

Date: 12/4/19

_____
MATTHEW D. KRUEGER
United States Attorney

Date: 12-4-19

_____
TIMOTHY W. FUNNELL
Assistant United States Attorney

11